UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE KOPKE,

       Plaintiff,

v.                      CASE No. 8:11-CV-1197-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## REPORT AND RECOMMENDATION

       The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

I.

       The plaintiff, who was forty-one years old at the time of the most recent administrative hearing and who has a ninth grade education, has worked as a waitress and a bartender (Tr. 60, 63). She filed a claim for

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

supplemental security income payments, alleging that she became disabled due to neck and back injuries (Tr. 199). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "back disorder (bulging disc at C5-C6 and C6-C7-T1); affective mood disorder; organic mental disorder; and substance abuse disorder (20 CFR 416.920(c))" (Tr. 13). The law judge concluded (Tr. 16):

> [T]he claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a). Specifically she can sit for 6 hours during an[] 8 hour workday and she is able to stand or walk up to 2 hours during an 8 hour workday with normal breaks. She is able to lift, carry, push or pull 10 pounds occasionally and a minimal amount continually. Additionally, the claimant is able to occasionally climb, balance, stoop, kneel, crouch and crawl. She has no visual, manipulative, communicative or environmental limitations as a result of her impairments. Finally, the claimant is able to do the mental demands of unskilled work which includes the ability to understand, remember and carry out simple routine instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting in a non-production type of environment (SSRs 85-15 and 96-9p).

The law judge found that, in view of these limitations, the plaintiff could not return to past relevant work (Tr. 26). However, she determined, based upon the testimony of a vocational expert, that there were a significant number of jobs in the national economy that the plaintiff could perform, such as order clerk, charge account clerk, and taxicab dispatcher (Tr. 26-27). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 27). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

-4-

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on two grounds. She argues first that the law judge did not state fully and accurately a medical expert's testimony, and, second, that the law judge failed to provide good cause for rejecting the opinions of a treating physician (Doc. 17, pp. 19, 22). Neither ground supports reversal.

At the administrative hearing, the law judge received testimony from medical expert Dr. Kenneth Cloninger, a board-certified neurosurgeon (<u>see</u> Tr. 82).  Dr. Cloninger testified that he had examined the plaintiff's

medical records (Tr. 83). Dr. Cloninger stated that an MRI of the lumbar spine done in June 2008 showed "a ruptured lumbar disc L5, S1, bilaterally, involving additional nerve roots" and that the MRI of the cervical spine showed "a significant disc bulge at C5-6 and C6-7" (Tr. 85). Dr. Cloninger added that the plaintiff's physical examinations indicate cervical and lumbar spasm and tenderness, but that "[m]ost of her neurological findings ... have been normal" (Tr. 86).

Dr. Cloninger also discussed the opinions of Dr. Douglas Smith and Dr. Hector Meruelo, two physicians who offered drastically different opinions regarding the plaintiff's functional limitations. In short, Dr. Meruelo opined that the plaintiff had no significant limitations, and Dr. Smith opined two months earlier that the plaintiff could not even perform sedentary work (Tr. 14). Dr. Cloninger stated in this respect (Tr. 87):

> One ... sort of counters the other. I don't know which one is more accurate....But I do think this lady has some problems. The MRI's certainly show that she's got significant degenerative changes in both the lumbar and cervical areas....And I think she does have some limitations, whether she can lift only 10 pounds. Dr. Smith says that's the case and she [the plaintiff] would be the only one who could know for sure, but I do

> think she has some limitations.[2] It's just a question
> of how much. And the fact that she hadn't seen a
> physician in two years, makes it rather difficult to
> assess her to date, as far as I'm concerned.

The law judge then asked Dr. Cloninger's opinion regarding the plaintiff's

work limitations, to which Dr. Cloninger responded that "she would have to

have the situation where she could get up, stand, walk around at her desire"

and that "[w]orking at a computer ... would be difficult for her" (Tr. 88).

> The law judge inquired further how long the plaintiff could sit

in a workday, to which Dr. Cloninger responded (id.):

> I really can't do that. I can only go by what these
> two doctors say....Dr. Smith severely limited her.
> According to him, she couldn't do sedentary work.
> And according to Dr. M[erue]llo, who examined her
> within two months of Smith, ... she could do light
> work....So I just – I have no idea who's right and
> who's wrong in the instance.

When pressed to give his independent opinion of the plaintiff's limitations,

Dr. Cloninger was not responsive and answered cryptically, "I would have to

agree more with Dr. Smith because the MRI's do show significant

---

[2]The plaintiff states that Dr. Cloninger said Dr. Smith would be the only one who would know for sure how much the plaintiff can carry (Doc. 17, p. 19). However, Dr. Cloninger's use of the pronoun "she" indicates that Dr. Cloninger was referring to the plaintiff because Dr. Smith is male.

degenerative changes of the cervical and lumbar spine, therefore, I would agree more with Smith's opinion than I would M[erue]lo's" (Tr. 89). In answer to the law judge's question whether the plaintiff meets a listing in Appendix 1, Dr. Cloninger stated, "given the fact that most of her neurological examinations have been within normal limits, I ... do not think that she meets or equals" Listing 1.04 (Tr. 89).

The law judge discusses Dr. Cloninger's testimony in his decision, and affords Dr. Cloninger's opinion some weight (Tr. 14-15). The plaintiff argues that the law judge's decision includes "misleading statements regarding [Dr. Cloninger's] testimony and omits [Dr. Cloninger]'s testimony that ... Dr. Smith's opinions are supported by the evidence of record" (Doc. 17, p. 19).

However, Dr. Cloninger did not testify that "Dr. Smith's opinions are supported by the evidence of record." As discussed above, Dr. Cloninger provided little definitive testimony, as he repeatedly stated with regard to the contrary opinions of Drs. Smith and Meruelo that he did not know which assessment was accurate (see Tr. 87, 88). Although, when pressed for a more specific opinion, Dr. Cloninger said that he "agree[d] more

with Dr. Smith because the MRI's do show significant degenerative changes of the cervical and lumbar spine" (Tr. 89), that equivocal statement merely indicates that Dr. Cloninger thought Dr. Smith's opinions are closer to the mark than Dr. Meruelo's. In other words, the plaintiff's functional limitations would fall somewhere between the two extremes opined by Drs. Smith and Meruelo.

Furthermore, Dr. Cloninger's testimony that the plaintiff did not meet Listing 1.04 (id.) shows that Dr. Cloninger did not concur with Dr. Smith's opinions because, as the law judge points out, "if the [plaintiff] was as limited as Dr. Smith opined, [s]he would have met Listing 1.04" (Tr. 15). Significantly, the only specific functional work limitations opined by Dr. Cloninger were lifting no more than ten pounds, a need to be able to stand up at times, and the avoidance of computer work (Tr. 87-88). Obviously, this testimony does not support Dr. Smith's opinion that the plaintiff has physical limitations that preclude her from even performing sedentary work.

The plaintiff also contends that the law judge's decision contains "misleading statements regarding the [medical expert]'s testimony" (Doc. 17, p. 20). In this regard, the plaintiff cites to the law judge's statement that "Dr.

Cloninger noted that all of the neurological examinations throughout the record were essentially normal" (id., Tr. 14). This is a misstatement, as Dr. Cloninger testified that "most," not "all," of the plaintiff's neurological examinations have been within normal limits (Tr. 86, 89). Notably, the law judge at a supplemental hearing recited Dr. Cloninger's testimony as being that "most" of the neurological exams were within normal limits (Tr. 38), thereby indicating that she correctly understood Dr. Cloninger's testimony. In any event, the plaintiff has made no attempt to show that the difference in wording would affect the outcome of the case.  Consequently, this error is harmless.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1983).

Next, the plaintiff argues that the law judge failed to explain why he discounted the testimony of Dr. Cloninger (Doc. 17, p. 21).  However, the premise of this argument is flawed, as the law judge stated that she "accord[ed] Dr. Cloninger's opinion some weight because it is offered in his area of expertise and it is consistent with the medical evidence of record" (Tr. 15).

The plaintiff contends further that Dr. Cloninger's opinions "should [have] be[en] given substantial weight," and that by giving Dr.

Cloninger's opinions less weight, the law judge "avoided a finding of 'less than sedentary' as per [Dr. Cloninger's] testimony"(Doc. 17, p. 22). This argument is meritless. First, the plaintiff does not cite any legal authority that the opinion of the medical expert should be entitled to the substantial weight afforded a treating physician. See Doc. 16, p. 2 (scheduling Order directs that challenges must be supported by citations to the governing legal standards). Law judges may ask for, and consider, opinions from medical experts on the nature and severity of a claimant's impairments. 20 C.F.R. 416.927(e)(2)(iii). However, as non-examining physicians, their opinions, standing alone, are arguably entitled to little weight. Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987); see also Reynolds-Buckley v. Commissioner of Social Security, 457 Fed. Appx. 862, 864 (11th Cir. 2012)("Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians."); 20 C.F.R. 416.927. On the other hand, these opinions may be entitled to more weight than afforded State agency non-examining physicians because they typically have reviewed the entire medical record, and they testify under oath and subject to cross-examination.

Regardless, the law judge did not, as the plaintiff contends, "avoid[] a finding of 'less than sedentary'" (Doc. 17, p. 22) by affording Dr. Cloninger's opinions less than substantial weight. As indicated, the only specific and definitive opinions offered by Dr. Cloninger were that the plaintiff should avoid lifting more than ten pounds, computer work and sitting in one position for extended periods of time. Accordingly, even if the law judge fully accepted the opinions of Dr. Cloninger, the plaintiff would not have been entitled to a finding of disability.

The plaintiff contends further under this same issue that the law judge "fails to support a finding of 'not disabled' by any medical evidence" (id., p. 21). In this regard, the plaintiff argues, cryptically, that the law judge's finding lacks substantial supporting evidence because (1) the law judge gave only some weight to the opinions of the non-examining reviewing physicians and the consulting physician, and (2) the consulting physician did not have the most recent MRI reports when forming his opinions (id.). However, the law judge stated in his decision that he reduced the weight given to the opinion of consulting physician Dr. Meruelo because Dr.

Meruelo did not have the 2008 MRIs for his consideration  (Tr. 14-15, 22). Therefore, any argument in this regard is specious.

Otherwise, the basis of the plaintiff's argument that the law judge failed to support the finding of not disabled is unclear.  If the plaintiff is arguing that the law judge's determination of the plaintiff's residual functional capacity must "match" the opinions of a medical source, that contention is unpersuasive, as the responsibility for assessing the plaintiff's residual functional capacity rests with the law judge.  20 C.F.R. 416.946(c). Thus, the law judge has the duty to evaluate and weigh the medical evidence of record.  <u>See</u> 20 C.F.R. 416.945, 416.927.   In other words, as the Commissioner correctly states, "the ALJ's RFC finding did not need to mirror the findings or opinion of any particular medical source" (Doc. 19, p. 15).

In this case, the law judge performed her responsibility to assess the evidence in accordance with the regulations.  20 C.F.R. 416.927.  Thus, she decided to give some weight to certain physician opinions, and discount others.  The law judge, furthermore, explained why she gave each of those opinions the weight that she did.  In particular, the law judge determined that the totality of the evidence warranted a residual functional capacity that was

less restrictive than opined by Dr. Smith, and more restrictive than opined by Dr. Meruelo. Further, as discussed infra, there is ample medical and non-medical evidence upon which the law judge reasonably concluded that the plaintiff had the residual functional capacity to perform a limited range of sedentary work (see Tr. 14, 18, 19, 20, 21, 22, 23, 25). See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (It is not enough to argue that the evidence would support a finding that the plaintiff was disabled, the plaintiff must show that the evidence compels a contrary conclusion.). Therefore, the plaintiff's vague argument that the law judge's decision was not supported by substantial evidence is unpersuasive.

The plaintiff's second issue is that the law judge failed to provide good cause for rejecting the opinion of treating physician Dr. Douglas Smith (Doc. 17, pp. 22-25). Dr. Smith opined in a Cervical Residual Functional Capacity Questionnaire and a Lumbar Residual Capacity Questionnaire dated May 10, 2007, that, due to cervical and lumbar disc disease, the plaintiff is essentially disabled from working (Tr. 452-54, 456-59). Specifically, Dr. Smith opined that the plaintiff could not walk one city block without rest or severe pain and could only sit for fifteen minutes at a time (Tr. 452, 457). He

also said that the plaintiff, in an eight-hour workday, could stand for less than two hours, sit only for about four hours, and would need to recline or lay down about two hours (Tr. 453, 457).  Further, Dr. Smith opined that the plaintiff could never lift ten pounds, stoop, or crouch, and that she was severely limited in reaching, handling, and fingering (Tr. 453, 457-58).  Dr. Smith added that the plaintiff would frequently need to take unscheduled breaks during the workday, and that she would likely be absent from work more than four times per month (Tr. 453, 458).  Dr. Smith opined that these limitations have existed since July 2005 (Tr. 454, 459).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

There is a preliminary issue whether Dr. Smith was a treating physician when he completed the Questionnaires.  The law judge stated that

Dr. Smith was not a treating physician (see Tr. 15, n.1). The plaintiff, however, argues that "Dr. Smith ... based his assessment on two years of treating [the plaintiff]..." (Doc. 17, p. 24). Further, she contends that, "due to this vast treating history," Dr Smith was "highly knowledgeable about [the plaintiff's] conditions (id., p. 22).

The plaintiff's contention that she had a longstanding treatment relationship with Dr. Smith when he completed the Questionnaires is incorrect. Thus, Dr. Smith expressly stated that he began treating the plaintiff in April 2007 (Tr. 454, 459), which was just one month before he filled out the Questionnaires. Further, Dr. Smith's contact with the plaintiff at that point was limited to two visits (see Tr. 359, 363, 452, 456).[3] It was during the second visit that Dr. Smith completed the Questionnaires (see Tr. 359). Dr. Smith specifically indicated that he based his opinions on "Historical Medical Records" (see Tr. 454, 459). He had the option to denote that his opinion was

---

[3]The plaintiff argues that Somogy v. Commissioner of Social Security, 366 Fed. Appx. 56 (11th Cir. 2010) "strongly mirrors" this case (Doc. 24, p. 17). In Somogy, the law judge rejected the opinion of a treating physician because Somogy had not seen that treating physician in the years preceding the physician's assessment when, in fact, Somogy had visited that physician ten times during the pertinent period. Somogy v. Commissioner of Social Security, supra, 366 Fed. Appx. at 63. Somogy is inapposite to this case, as the law judge accurately stated that the plaintiff had only two treatments with Dr. Smith prior to Dr. Smith's completion of the Questionnaires.

based on "Direct Observation/Treatment," but he did not mark that choice (id.).

Under those circumstances, the law judge could reasonably think that Dr. Smith should not be viewed as a treating physician when he completed the Questionnaires. Thus, when Dr. Smith completed the Questionnaires, he clearly lacked a "detailed, longitudinal picture of [the plaintiff's] medical impairments," 20 C.F.R. 416.927(c)(2), which is the rationale for affording treating physician opinions greater weight. See Lewis v. Callahan, supra, 125 F.3d at 1440; Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983)(a treating physician's opinions are entitled to greater weight due to the physician's "familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time"). Moreover, Dr. Smith's opinions are premised upon a review of medical records so that, unlike a treating physician, Dr. Smith does not "bring a unique perspective to the medical evidence that c[ould] not be obtained from the objective medical findings alone or from reports of individual examinations." Lewis v. Callahan, supra, 125 F.3d at 1440 (quoting 20 C.F.R. 404.1527(d)(2)).

Regardless, although the law judge stated initially that Dr. Smith was not a treating physician, the law judge proceeded to analyze Dr. Smith's opinions as if he was a treating physician. Thus, she considered whether Dr. Smith's opinions were entitled to "controlling weight" (Tr. 22), which, under the regulations, is a standard applied only to treating physicians. 20 C.F.R. 416.927(c).

In all events, even assuming the opinions expressed by Dr. Smith in the Questionnaires were entitled to be considered as opinions from a treating physician, the law judge stated good cause for assigning less weight to those opinions. In this connection, the law judge explained (Tr. 22):

> I accord less than controlling weight to this opinion because it is inconsistent with the substantial evidence of record. Further, the claimant has admitted to physical activities throughout the record and discussed at length throughout this decision which are consistent with this opinion. Further, there are no contemporaneous treatment notes to support these limitations. Additionally, Dr. Erickson at Interventional Rehabilitation of South Florida, to whom Dr. Smith referred the claimant for pain management[,] indicated that there were interventional treatment treatments that would help the claimant, but which she refused to undergo (Exhibit B221-2F).(Ex. B9F at 2, 12, 20-25). The doctor apparently relied on the claimant's

> self-report, which, the record documents, is not
> entirely credible.

This explanation provides good cause for discounting the Questionnaires. Further, the explanation is supported by substantial evidence.

First, it is noted that the Questionnaires were conclusory in nature. Thus, Dr. Smith's opinions consisted primarily of checkmarks on a form, and Dr. Smith did not explain in any meaningful way his opinions of extreme functional limitations (Tr. 452-59). For example, there is no explanation why the plaintiff cannot sit for more than fifteen minutes at a time (an opinion that the Commissioner points out is contradicted by the plaintiff's testimony that she rode for forty-five minutes in a car to the hearing (Doc. 18, p. 9)). The conclusory nature of Dr. Smith's opinions alone provides a recognized basis for discounting the Questionnaires. Lewis v. Callahan, supra.

Further, with regard to the inconsistencies between the Questionnaires and the record, the law judge specified that the plaintiff "admitted to physical activities throughout the record which are consistent with" the law judge's determination of her residual functional capacity (Tr. 22; see Tr. 18, 350). See Forrester v. Commissioner of Social Security, 455

-19-

Fed. Appx. 899, 902 (11th Cir. 2012)(the law judge does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion). For example, the law judge cited evidence that the plaintiff can care for her personal needs, do household chores, shop for groceries, and drive a car (Tr. 18, 20; see Tr. 229, 350). Further, at the administrative hearing the plaintiff testified that she does "[a] lot of bending and walking," and specified that she "tr[ies] to walk three times a day" (Tr. 82), which is irreconcilable with Dr. Smith's opinion that the plaintiff could not walk even one city block without severe pain or needing to rest (Tr. 453, 457).[4]  Therefore, the law judge's determination that the plaintiff's daily activities are inconsistent with Dr. Smith's opinions is supported by substantial evidence.

With regard to the medical evidence, the law judge explained that "there are no contemporaneous treatment notes to support" Dr. Smith's

---

[4]The record contains more inconsistencies between the plaintiff's testimony of what she can do and Dr. Smith's opinions. Thus, the plaintiff testified that she can reach in all directions, and she is not aware of any problems using her hands or fingers (Tr. 74). However, Dr. Smith opined that she was severely limited in reaching, handling and fingering (Tr. 453). Dr. Smith also opined that the plaintiff suffered from the severe limitations outlined in the Questionnaires since July 2005 (Tr. 454, 459), but evidence shows that the plaintiff was employed as a waitress in September 2005, three months later (Tr. 375).

opinion of disabling limitations (Tr. 22). The law judge is correct, as Dr. Smith's progress notes during the pertinent time merely identify on a checklist form tenderness and spasms, and no notations of neurological deficiencies (see Tr. 359, 363). Thus, these treatment notes do not reflect debilitating limitations. Further, the law judge cites to medical evidence throughout the decision that is inconsistent with disabling limitations (see Tr. 14, 18, 19, 20, 21, 22, 23, 25). For example, the law judge specifies essentially normal neurological examinations, and that the 2008 MRI of the cervical spine showed only minimal cervical disk bulging, without disk herniation, cord compression or significant foramina narrowing, and that the lumbar spine disk herniation was without canal stenosis (Tr. 14, 18, 20, 23, 25).[5]

The law judge also considered in rejecting Dr. Smith's opinion of disabling limitations that the plaintiff refused to undergo interventional treatments proposed by a physician to whom Dr. Smith referred the plaintiff for pain management (Tr. 22, 23; see Tr. 461). The law judge could

---

[5]The herniation was also characterized as "small" (Tr. 483). To place the spinal impairment in context, it is noted that Dr. Alan M. Lazar, the plaintiff's treating orthopedic surgeon, opined the plaintiff had an impairment rating of 12% due to cervical and lumbar spine injuries (Tr. 510).

reasonably infer from the plaintiff's unwillingness to undergo this relatively conservative treatment that her impairments were not as limiting as opined by Dr. Smith.

Finally, the law judge noted that Dr. Smith's opinions were undermined by his apparent reliance upon the plaintiff's subjective complaints (Tr. 22), since the plaintiff was found not fully credible. The law judge could have reasonably inferred that some of the information contained in Dr. Smith's Questionnaires was reported by the plaintiff, as it references dates prior to his initial contact with the plaintiff and, also, subjective complaints of pain. Significantly, the plaintiff has not challenged the law judge's credibility determination, and, in light of the scheduling Order (Doc. 16, p. 2), any such challenge is deemed abandoned.

In sum, the law judge's reasons for discounting the Questionnaires completed by Dr. Smith are adequate and supported by substantial evidence. See Lewis v. Callahan, supra. Furthermore, those reasons are in addition to the fact that Dr. Smith had only seen the plaintiff twice at the time he filled out the Questionnaire and the fact that he based his

opinions on "Historical Medical Records," and not "Direct Observation/ Treatment" (Tr. 452, 454, 46, 459).

The plaintiff argues that the law judge's rejection of Dr. Smith's opinions "lacks specificity" (Doc. 17, p. 24). However, as discussed above, the law judge gives a detailed explanation why the disabling limitations opined in the Questionnaires are inconsistent with the record, and this finding is supported by substantial evidence. Therefore, the plaintiff's citation to Poplardo v. Astrue, 2008 WL 68593 at *11 (M.D. Fla. 2008)(unpub. dec.), in which the law judge summarily dismissed the treating physician's opinion as inconsistent with the record, is inapposite.

The plaintiff also argues that the law judge gave reasons for rejecting Dr. Smith's opinions that are "illogical and ... misstat[e] the record" (Doc. 17, p. 24). In this regard, the plaintiff contends that the law judge misstated the record when he said that Dr. Smith based his opinions on "an examination of the record" (id., p. 23). However, Dr. Smith stated that his opinions were based on "Historical Medical Records" (Tr. 454, 459). Therefore, the law judge's salient point that Dr. Smith's opinions were

premised upon a review of the plaintiff's medical records, and not his own examination of the plaintiff, is correct (see id.).

The plaintiff also argues that the law judge's finding that Dr. Smith is not a treating source "is ludicrous as there are three years of treatment notes from Dr. Smith to support his two RFC assessments" (Doc. 17, p. 23). However, as discussed above, when Dr. Smith completed those Questionnaires, he had only met and treated the plaintiff twice. Furthermore, the plaintiff does not identify any findings in these treatment notes which support the extreme functional limitations opined by Dr. Smith in the Questionnaires. Therefore, the plaintiff's challenge to the law judge's decision to discount Dr. Smith's opinions expressed in the Questionnaires is unpersuasive.

## IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
DATED: SEPTEMBER 26, 2012   UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).